No. 60,477

HELEN V. GOSS, *Appellant,* v. RICHARD REID and OAK PARK NATIONAL BANK, *Appellees.*

(751 P.2d 131)

Opinion filed February 29, 1988.

*William H. Pickett,* of William H. Pickett, P.C., of Kansas City, Missouri, argued the cause, and *Catherine A. Donnelly,* of the same firm, and *Donald Hochanadel,* of Overland Park, were with him on the brief for the appellant.

*Richard T. Merker,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *Timothy G. Lutz,* of the same firm, was with him on the brief for the appellee Oak Park National Bank.

*J. Michael Grier,* of Blackwell, Sanders, Matheny, Weary & Lombardi, of Overland Park, argued the cause, and *James M. Warden* and *Phillip D. Kline,* of the same firm, were with him on the brief for the appellee Richard L. Reid.

The opinion of the court was delivered by

MILLER, J.: Helen V. Goss brought suit against Oak Park National Bank and Richard Reid for malicious prosecution of a civil action. This appeal is from a directed verdict entered in favor of the Bank and a jury verdict entered in favor of Richard Reid.

Plaintiff's action followed a mortgage foreclosure action brought by attorney Reid on behalf of his client, Oak Park

National Bank, on a note and mortgage executed by James A. Goss to the Bank upon which note payments were in default. Before filing suit Reid secured a title search by Columbian National Title Company to determine whether any person had any interest, right, or claim to the real estate described in the mortgage. A title report was issued by Columbian National to Reid stating that child support payments were due from James A. Goss to Helen V. Goss by reason of a judgment in case No. 69188, in the district court of Johnson County. Reid then named Helen V. Goss as a party defendant in the foreclosure proceeding in order to protect the interests of the Bank and to insure that a clear and marketable title could be obtained. Also named as defendants in the foreclosure action were James A. Goss, the debtor; Capitol Federal Savings and Loan Association, which held a prior mortgage on the same real property; and the Kansas Department of Revenue, by virtue of a state tax lien filed against James A. Goss. The petition alleged in substance that Helen V. Goss is named as a party defendant by virtue of case No. 69188 filed in the district court of Johnson County, titled Helen V. Goss v. James A. Goss. The petition sought a personal judgment against James A. Goss, foreclosure of the mortgage, sale of the property, and a determination that the interest, if any, of each of the other named defendants be determined and adjudged to be inferior to the rights of the Bank. No money judgment was sought against Helen V. Goss.

Helen V. Goss was indeed married to and was divorced from James A. Goss. It develops, however, that there were two persons named James A. Goss who were uncle and nephew. Helen V. Goss was married to and divorced from the uncle; the nephew was the mortgagor and the former owner of the real estate in question. Helen V. Goss has no judgment against the nephew and has never claimed any interest in and to the real estate upon which the mortgage was being foreclosed. Helen V. Goss was never served with a summons and a copy of the petition; instead, her first knowledge of the action came on January 9, 1984, when she was served with a copy of the answer, cross-claim, and counterclaim of Capitol Federal. After being served, she contacted her attorney. He called counsel for Capitol Federal. Capitol Federal's attorney in turn contacted Columbian National

Title, which agreed to withdraw its exception, and he also telephoned defendant Reid. About the same time Helen V. Goss spoke with one of the officers of Oak Park National Bank, where she is and has been a customer. The banker, upon realizing the mistake, called Reid to explain the mix-up in the names and to seek a dismissal as to Helen. Reid promptly prepared an order of dismissal, circulated it to other counsel, and secured an order of the court dismissing the action as to Helen V. Goss. This occurred by the end of January 1984.

In this malicious prosecution action, plaintiff claims that Reid should have made a demand upon her and should have offered her the opportunity to respond with her version of the facts before instituting suit against her; that an investigation would have revealed that she was not married to and held no judgment against the James A. Goss who was the mortgagor of the property here involved; and that the wrongful filing of the action against her has caused her great pain and mental suffering. Plaintiff has and claims no interest in the realty; that is precisely what Reid sought to have the court declare in the mortgage foreclosure action.

Plaintiff relies heavily on our decision in *Nelson v. Miller*, 227 Kan. 271, 607 P.2d 438 (1980), an action for malicious prosecution of a civil action brought by a physician against the attorneys who had previously filed a multi-million dollar malpractice action against him. In that opinion, we said:

"In cases where attorneys are sued for malicious prosecution of a civil action, there are special rules to be applied in determining an attorney's liability. In Restatement [(Second) of Torts] § 674 comment *d* [(1976)], the liability of an attorney in such an action is stated to be as follows:

" '*d. Attorneys.* An attorney who initiates a civil proceeding on behalf of his client or one who takes any steps in the proceeding is not liable if he has probable cause for his action (see § 675); and even if he has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. (See § 676.) An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.

" 'If, however, the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose, as, for

example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person. . . . An attorney may also be subject to liability if he takes an active part in continuing a civil proceeding properly begun, for an improper purpose and without probable cause.' pp. 453-454.

We approve section 674 and comment *d* as a fair statement of the law to govern the liability of attorneys in Kansas for malicious prosecution of a civil action. . . . We . . . adopt the general statement of the law as set forth in Restatement (Second) of Torts § 674 (1976) which is quoted above.

"[T]he attorney must accept the obligation to conduct a reasonable investigation in an attempt to find what the true facts are before filing a civil action on behalf of his client. In determining probable cause in a malicious prosecution action brought against an attorney, a jury may properly consider not only those facts disclosed to counsel by the client but also those facts which could have been learned by a diligent effort on the attorney's part. In determining the purpose of the attorney in filing a civil action, a jury may properly consider as evidence of good faith or absence of malice the fact that the attorney, before filing an action, made a demand upon his client's adversary and extended to him the opportunity to respond with his version of the facts. This should be the standard procedure unless an immediate filing of an action is required by the imminent running of the statute of limitations or some other good reason." *Nelson v. Miller*, 227 Kan. at 282-85.

Mr. Reid, in preparing the mortgage foreclosure action, sought and received a report from a title company disclosing the names of all persons who could have title to or liens or claims against the described real estate. He wrote a letter to James A. Goss, the mortgagor, telling him that his note was overdue and informing him that the mortgage would be foreclosed if the note was not paid. Reid did not write to Helen V. Goss.

The controlling issue in this lawsuit is whether attorney Reid had probable cause as a matter of law to include Helen V. Goss as a defendant in the foreclosure action. Upon review of the factual background and the applicable law, we hold that he did. We agree with the rationale found in the following testimony of Mr. Gerald L. Goodell, called as an expert by the defendant:

"Q. Mr. Goodell, in your practice in filing a foreclosure action, do you make a distinction between the debtor who owes money and other potential defendants in determining whether to send a letter in advance asking them to pay?

"A. Yes.

"Q. And what is that distinction?

"A. Well, the distinction is the debtor you're going to seek a money judgment against. A person such as Mrs. Goss you are quieting the title. You are not seeking

any type of money judgment against her whatsoever. And in one way, you're giving her the chance to get paid if, in fact, she did have unpaid child support against this property. On the other hand, you are performing the quiet title aspect, the foreclosure, by joining her.

"Q. Mr. Goodell, what did you mean . . . when you said the reasonable investigation depends on the type of lawsuit?

"A. In a mortgage foreclosure suit investigation concerning joining of people with possible liens, in my opinion, is the ordering of the report. You are getting a report from people who are paid to research the records and to give you the names of everybody that might have a lien against that property. That's what I mean."

The client in this case, the Bank, gave its attorney, Reid, information as to the note and mortgage and the delinquency. Reid then ordered a title search in order to determine who else, if anyone, had potential liens or claims against or title to the described property. The client has the right to expect the attorney to handle the foreclosure proceeding so that when judgment is entered, the mortgage is foreclosed, and the property is sold, clouds on the title will be removed and the purchaser at the sale will receive clear or marketable title. Failure to clear the title of potential clouds at the time that the mortgage is foreclosed could constitute legal negligence or malpractice. The title search is instituted for the purpose of discovering those persons or corporations who, according to the public records, have potential claims. Absent unusual circumstances, which were not present here, we hold that the securing of a title search and report from a title company regularly engaged in that endeavor satisfies the foreclosure attorney's burden of conducting a reasonable investigation.

Before filing the foreclosure action Reid wrote to the mortgagor, James A. Goss. He did not write to the other defendants, including Helen V. Goss, against whom he sought judgment only that their liens, if any, were inferior and subject to that of the plaintiff Bank. This omission is cited by appellant as demonstrating or evidencing bad faith or malice on the part of the foreclosing attorney. But, as we have noted, the attorney had probable cause to include Helen V. Goss as a defendant in the foreclosure action.

Must a "demand letter" be sent to one who is about to be joined in order to remove a cloud on the title? No money

judgment is sought against such person; court costs will not be assessed against such person; the only purpose of joining such person as a defendant in the action is to alert that person to come forward and establish any interest such person may claim in the property. If no claim is asserted, the court will decree that such person has no interest superior to that of the foreclosing party. If a claim is asserted, the court will determine the validity and priority of such claim. Those joined as additional party defendants in a foreclosure action include other lenders whose mortgages are of record, record lien claimants, and those who may have some judgment or other claim the efficacy of which is unclear from the record. Holders of mortgages and liens of record will ordinarily appear to protect their claims. Those who have potential liens or claims may or may not appear. We see no reason that such persons be personally notified before the foreclosure proceeding is commenced, and we hold that the failure to notify such persons in advance does not, absent some other factual showing, indicate bad faith or malice on the part of the foreclosing party or its attorney. Though taken literally, the language of our opinion in *Nelson v. Miller* might indicate that every defendant be notified before an action is filed, such notice need not be sent to persons joined only for the purpose of quieting titles and against whom no money judgment is sought. Despite the quoted language from *Nelson v. Miller*, an attorney need not make a written demand upon proposed defendants in advance of the filing of an action in the nature of a quiet title or mortgage foreclosure proceeding. *Nelson v. Miller* was not intended to apply to such proceedings.

There is no evidence that Reid knew of the existence of two James A. Gosses or that he had actual knowledge that Helen V. Goss had a judgment against a James A. Goss different from the mortgagor. There is no evidence that Helen V. Goss was named as an additional defendant in the foreclosure action for any purpose other than that of perfecting the title to the real estate. The Bank did not designate Helen V. Goss as a defendant, and as soon as a bank official learned of her inclusion in the lawsuit, he notified Reid that she had no interest and the action against her should be dismissed. Reid promptly did so. Finally, there is no evidence that Reid joined Helen V. Goss as a defendant because

of any ulterior motive. He joined her only to remove the cloud on the title pointed out by the title report.

The elements of wrongful use of civil proceedings, or malicious prosecution of a civil action, are carefully reviewed in *Nelson v. Miller*, and we will not repeat that discussion here. Two of the essential elements of such a cause of action, both of which must be established, are that the civil proceeding was initiated without probable cause and that the defendant acted with malice primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings were based. *Nelson v. Miller*, 227 Kan. at 276. See Restatement (Second) of Torts § 674 comment d (1976). We hold that the mortgage foreclosure proceeding at issue here was instituted with probable cause and that there is no evidence indicating malice on the part of either defendant or that either of them acted for any purpose other than that of securing the proper adjudication of the foreclosure proceeding. Neither element was established.

Other issues raised need not be addressed since our holding set forth above determines this appeal. Defendants' request for attorney fees is denied since this case raises an issue we have not found in any reported case.

The judgment is affirmed.